[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This contested dissolution matter came to this court by summons and complaint dated July 2, 1991 in which the plaintiff, Linda Holland, claims a dissolution of the marriage, an allowance to prosecute, a fair and equitable property distribution, alimony, return of her maiden name and other related relief against Gregory Holland, the defendant. Service was made by the sheriff's handing a true and attested copy of the original summons and complaint to attorney John Carey, who was authorized to accept service on behalf of the defendant. The case was given a return date of July 30, 1991 and was actually filed in court on July 8, 1991.
Both parties and their counsel were present in court when the matter was assigned for trial in Norwich by her on July 24, 27, and 28, 1991. Prior to trial, the parties submitted the required financial affidavits.
The court finds that the plaintiff, whose maiden name was Gaynor and whose name at the time of the marriage was Santangelo, was married to the defendant at East Lyme, Connecticut on March 20, 1987. Both parties had resided CT Page 8298 continuously in the state of Connecticut for at least one year preceding the date of the complaint. Although no minor children were born to the parties since the date of their marriage, the plaintiff has three children, Michael, Lisa and Brian, from her prior marriage to Michael Santangelo, and the defendant has one child, Kathryn, issue of his earlier marriage to Mary Holland. Both first marriages ended in divorce. Mary Holland has custody of Kathryn, who did have a bedroom set aside for her for visitation at the home of Gregory and Linda Holland. The plaintiff's children ranged in age from about 14 to 19 at the time of the marriage of the parties, and they resided with the parties for varying periods of time during the marriage. They have now all reached the age of majority.
The court finds that the marriage of the parties has broken down irretrievably with no reasonable hope of reconciliation. It was clear to the court from all of the testimony that the principal reason for the breakdown of the marriage was the inability of the defendant and the plaintiff's children to get along with each other. This, unfortunately, is not an uncommon problem. Whether the relationship between the defendant and the plaintiff's children could have been made to work is difficult to determine. It is not at all clear that any of the individuals involved did all that they could to explore the issues that divided them and to attempt to make that relationship work. Thus, although the court finds this to be the principal cause of the breakdown, it does not find that either party bears a disproportionate share of the blame.
Although the court heard evidence to the effect that the defendant has been having a sexual relationship with another woman, the precise time that this relationship began was not established by a preponderance of the evidence. This extra-marital affair no doubt exacerbated the parties' difficulties, but it is clear to the court that by the time that it had begun, the parties' marriage had already broken down irretrievably with no reasonable hope of reconciliation.
Fault, in any event, is only one of the factors for the court to consider. In determining issues of alimony and the assignment and distribution of property, the court is directed by the legislature to consider, and in this case has considered, the following factors: ". . .the length of the marriage, the causes for the . . .dissolution of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties." Connecticut General Statutes 46b-81
and 86b-82. The court has also considered the appearance, CT Page 8299 demeanor, attitude and interest in the outcome of the case of the parties and the witnesses as well as the interrelationship of the various orders that it has decided to enter.
The court finds that both parties were employed by the same bank for many years, and that this how they met. They both remained in the same employment for a period of time following the marriage, after which the defendant left this job in order to return to school and finish his college education. Although he was not employed for more than half the time that the parties were together, however, he contributed between $800.00 to $1,000.00 per month toward the parties' expenses. These contributions came from a combination of the proceeds of the sale of his prior home, employment earnings, unemployment compensation, and student loans and grants.
The court has reviewed the parties' financial affidavits and tax records. Although the latter are not complete, the court finds that the plaintiff's net income during the period that the couple resided together, exclusive of child support payments, was also in the neighborhood of $800.00 to $1,000.00 per month. It therefore appears to the court, and the court so finds, that the parties contributed equally, in financial terms, to the marriage.
At the time of the marriage, the plaintiff was the owner of the family home as the result of the decree dissolving her first marriage. There was a mortgage in the amount of approximately $31,000.00 outstanding, and the dissolution decree required her to pay $15,750.00 to her ex-husband in the event of remarriage. The parties therefore refinanced the house in order to pay off Mr. Santangelo.
The amount of the current mortgage is virtually identical to the sum of the amount of the previous mortgage plus the amount that had been due to Mr. Santangelo. Thus, the plaintiff still owns the same asset that she owned prior to the marriage, and it is encumbered to the same extent as it was prior to the marriage. The court finds that the current market value of the house is approximately $100,000.00, but any decline in the current equity in that asset is solely the result of fluctuating market conditions which, of course, will continue to fluctuate. Since there was no testimony to the effect that the plaintiff either needs or desires to try to sell the home at present, the decline from its 1987 appraised value of $110,000.00 is not of great significance in determining the financial aspects of this dissolution. CT Page 8300
The court finds that the marriage has extended for about five and one-third years, four and one-third years of which were spent together. The reason for the breakdown of this relatively brief marriage was, as previously indicated, the inability of the defendant and the plaintiff's children to develop a healthy and wholesome relationship. These difficulties led to a deterioration in the relationship between the parties themselves, eventually resulting in separation. There was no evidence upon which this court could find that either party bears a disproportionate share of the blame for this breakdown.
The plaintiff is seven years older than the defendant. All other things being equal, this age differential has some impact on the total of the plaintiff's future earning capacity, both as it effects the progress of her career and the amount of time in which she will be able to earn an income. Both parties appear to be in good health, and although the plaintiff claimed back problems, there was no evidence that her earning capacity was being affected as a result.
The plaintiff has had a long career as a bank teller. Her position seems to be secure, but with no clear path toward significant advancement unless she is willing to relocate, and she has indicated that she is not. She has a high school education. She currently grosses about $420.00 per week.
After many years as a banker, the defendant returned to college during the marriage. He is now working as a Fire Watch Supervisor and is grossing $760.00 per week, but he puts in substantial overtime to do so.
Throughout the time that the parties were living together, they each contributed equally to the upkeep of the home and the expenses of the marriage. In the case of the plaintiff, these resources came from her employment income almost exclusively; in the case of the defendant, his contribution represented a combination of savings from the proceeds of the sale of his former home, employment income, student loans and unemployment compensation. The fact that the plaintiff was able to work was a significant factor in enabling the defendant to return to college.
Although the plaintiff's overall financial condition is not much different from what it was at the time she entered into the marriage, the defendant's situation has changed in many respects. He entered the marriage with CT Page 8301 approximately $80,000.00 in a savings account, plus his personal property. Even taking into account the fact that he admittedly undervalued one sailboat on his financial affidavit and neglected to mention another sailboat that might be worth up to $1,000.00, the value of his assets, other than personal furnishings, has declined to under $30,000.00. On the other hand, he has acquired during the course of his marriage a valuable intangible asset, namely a college education.
The court finds that the defendant has no entitlement to a portion of the real property of the plaintiff. Although he joined with her for refinancing purposes, he quitclaimed his share in the property back to her within a few months. Whatever his motivations for the later transfer may have been, he can make no legal claim to the property, and the court further finds that he does not have equitable claim to it either.
Although the marriage has cost both parties dearly in emotional terms, it cannot be said that either party has been economically disadvantaged as a result of the few years they spent together. They made a try at a marriage, did not succeed, recognized that failure, and should be allowed to go their separate ways with as few remaining ties as necessary to assure that justice is done.
The court therefore finds that it has jurisdiction by reason of the residency of the parties, and that the marriage has broken down irretrievably with no reasonable hope of reconciliation. A decree dissolving the marriage on grounds of irretrievable breakdown may enter.
There shall be no alimony as to either party.
Pursuant to the Order of the court, Leuba, J., dated July 6, 1991, with respect to the defendant's personal property, any such personal property which was not removed from the plaintiff's residence within the time period specified by that order is considered abandoned and may be disposed of by the plaintiff as she sees fit. The dining room set in the possession of the defendant shall be returned to the plaintiff in good condition within thirty days. All other assets and personal property listed on the financial affidavits of the parties shall be the exclusive property of the party listing them.
The real property known as 84 School Street in New London shall be exclusively the property of the plaintiff.
CT Page 8302 The obligations and liabilities shown on the defendant's financial affidavit, with the exception of the joint Mastercard, CNB line of credit and Sears bills shall be exclusively the responsibility of the defendant. The defendant shall pay to the plaintiff the sum of $2,174.64, representing one-half of the joint Mastercard, CNB line of credit and Sears bills as of the date the trial of this case commenced. This payment is to be made within thirty days of the date of judgment. Once this payment has been made, all the obligations and liabilities shown on the plaintiff's financial affidavit shall be exclusively the responsibility of the plaintiff.
The plaintiff shall be entitled to resume the name Linda Santangelo.
Silbert, J.